UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDRE BIENGARDO

                Plaintiff,

    v.                                   **DECISION AND ORDER**
                                               **08-CV-1288 (VEB)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## I. Introduction

Plaintiff Andre Biengardo challenges an Administrative Law Judge's ("ALJ") determination that he is entitled to neither disability insurance benefits ("DIB"), nor Supplemental Security Income ("SSI"), under the Social Security Act ("the Act"). Plaintiff alleges he has been disabled since January 1, 2004, because of limitations from a mental illness that includes symptoms of paranoia, anxiety, depression, attention deficit disorder, and fear of leaving home, and because of low intelligence. Plaintiff met the disability insured status requirements of the Act through September 30, 2008.

## II. Background

Plaintiff filed applications for DIB and SSI on September 2, 2005. On both applications he alleged an onset of disability date of January 1, 2004. His applications were denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ. See 65 Fed. Reg. 81553 (Dec. 26, 2000). Pursuant to

Plaintiff's request, an administrative hearing was held on December 5, 2007, before ALJ Elizabeth Koennecke, at which time Plaintiff appeared without counsel. The ALJ considered the case *de novo*, and on March 19, 2008, issued a decision finding that Plaintiff was not disabled. On November 6, 2008, the Appeals Council denied Plaintiff's request for review.

On December 1, 2008, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court to review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB or SSI benefits to Plaintiff.[1] The Defendant filed an answer to Plaintiff's complaint on March 6, 2009, requesting the Court to dismiss Plaintiff's complaint. Plaintiff submitted a Plaintiff's Brief on June 3, 2009. On July 22, 2009, Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings ("Defendant's Brief")[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision. Thus, the Court affirms the decision of the Commissioner.

### III. Discussion

---

[1] The ALJ's March 19, 2008 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

**A. Legal Standard and Scope of Review:**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final

---

[3] This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity. If he is not, the [Commissioner]next considers whether the claimant has a "severe impairment" which
significantly limits his physical or mental ability to do basic work active-ties. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment
which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work
experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

## B. Analysis

### 1. Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status requirements of the Social Security Act through September 30, 2008 (R. at 24);[4] (2) Plaintiff engaged in substantial gainful activity from 2006 through April 2007 (20 C.F.R. §§ 404.1520(b), 404.1571 *et.seq.,* 416.920(b) and 416.971 *et. seq.*) (R. at 24); (3) Plaintiff has the following severe impairment: a schizoaffective disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)) (R. at 25); (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) (R. at 26); (5) Plaintiff has no exertional limitations. He has the residual functional capacity to understand, carry out, and remember simple and more complex instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work

---

[4] Citations to the underlying administrative are designated as "R."

5

setting. He can perform semi-skilled work (R. at 27); (6) Plaintiff is capable of performing his past relevant work as a donut maker and cook. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965) (R. at 29); and (7) Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2004, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)) (R. at 30). Ultimately, the ALJ determined Plaintiff was entitled to neither a period of disability and disability insurance benefits as set forth in sections 216(i) and 223(d) of the Social Security Act, nor supplemental security income as set forth under section 1614(a)(3)(A) of the Act (R. at 30).

### 2.     Plaintiff's Claims

Plaintiff challenges the decision of the ALJ on the basis that it is not supported by the substantial evidence of record. Specifically, Plaintiff alleges (a) the ALJ failed to properly develop the record for this *pro se* claimant with respect to his limited intellectual capacity, and (b) the residual functional capacity established for Plaintiff by the ALJ does not take into account the limitations caused by his severe mental impairment. See Plaintiff's Brief, pp. 1-10. The Court also notes that while Plaintiff does not specifically raise the claim that his waiver of representation was invalid, he states he was "steamrolled" by the ALJ into proceeding with the hearing without the assistance of counsel or of a friendly witness. See Plaintiff's Brief, p. 6-7. The Court will first address the issue of Plaintiff's waiver of his right to representation.

### a. Plaintiff Properly Waived His Right to Representation

Plaintiff does not argue in his brief that his waiver of representation was ineffective. Instead, he claims that because of his mental and intellectual impairments, he was "steamrolled" by the ALJ into proceeding with the hearing on the day it was scheduled without counsel or a friendly witness. Id. The Commissioner argues that Plaintiff was properly advised of his right to representation prior to and at the time of the hearing and that he effectively waived this right. See Defendant's Brief, p. 19.

A claimant in a social security matter has a statutory and regulatory right to representation. See 42 U.S.C. § 406; 20 C.F.R. 404.1705. However, this right falls well below the standard of right to counsel established by the Sixth Amendment for criminal cases. See Evangelista v. Secretary of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). While a social security claimant should be given appropriate notification of his or her right to representation, a claimant may, after receiving notification, waive the right by intelligently deciding to proceed *pro se.* Id. at 142. See also Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). The information required to be presented to a claimant to ensure a valid waiver of counsel includes an explanation of how an attorney can assist in the proceedings, the possibility that the claimant may be entitled to free counsel or a fee contingency arrangement, the limitation on attorneys' fees to 25 percent of the past due benefit amount and court approval of the fee amount. See Thompson v . Sullivan, 933 F.2d 581, 584 (7th Cir. 1991). Some Circuit Courts of Appeal, including the Fifth, Seventh, and Eleventh

Circuits, have required ALJs to make broader disclosures than the statutory language at the time of a hearing to *pro se* claimants regarding the right to representation.  In addition to the statutory language, these Circuits require that a pro se claimant be informed of (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees for a waiver of counsel to be valid.  However, the Second Circuit has concluded that because the statutory language for the notice requirement is adequate and has been in place since 1991, additional disclosures should not be made mandatory.  See Lamay, o/b/o Kyle Phillips-Dowler, 562 F.3d 503, 507-508 (2d Cir. 2009) ("[w]e conclude that, although the disclosures for which Lamay argues, which go beyond those mandated by statute, may be salutary, such disclosures are not required for a knowing and voluntary waiver of counsel. Given that the statutory minimum disclosure requirements were met, Lamay was adequately informed of her right to counsel and so must be deemed knowingly and voluntarily to have waived that right.").

In this matter, Plaintiff was sent the proper statutory and regulatory notices prior to his hearing (R. at 40-53).  The notice entitled "Your Right To Representation" advised Plaintiff that he had a right to representation by an attorney or other qualified person of his choice, and that a representative could be of assistance in helping him marshal his claim through the SSA claims process (R. at 43).  This notice also informed Plaintiff that his representative was required to file a fee agreement or petition with the SSA before collecting a fee

and described how any fee approved in his claim would be calculated (R. at 43-44). Moreover, Plaintiff was sent a list of organizations that provide legal services free of charge or contingent upon a claimant's receipt of benefits (R. at 45). Plaintiff was again advised of his right to representation at the beginning of his hearing by the ALJ (R. at 187). While Plaintiff told the ALJ he was accompanied to the hearing by a friend whom he wished to testify on his behalf and who could not enter the building because she lacked proper identification, Plaintiff confirmed that his friend was not his representative (R. at 188). He further stated that his friend was going to reiterate his testimony (R. at 190). The ALJ asked Plaintiff three separate times if he wished to waive his right to representation and proceed with the hearing on his own (R. at 188, 190). Each time, Plaintiff replied that he wished to proceed with the hearing. Id. Thus, the Court finds Plaintiff validly waived his right to representation and was not "steamrolled" by the ALJ into going forward with the hearing without a representative.

      **b.**    **The ALJ Properly Developed the Record for Plaintiff With Respect to His Intellectual Capacity**

Plaintiff's second challenge to the ALJ's decision is that the ALJ failed to develop Plaintiff's record with respect to his intellectual capacity. Specifically, Plaintiff alleges the ALJ failed to find low intelligence to be a severe impairment because Plaintiff's record was not properly developed. See Plaintiff's Brief, pp. 3-8. Plaintiff claims that because he was a *pro se* claimant, the ALJ had a heightened responsibility to develop the record fully and fairly with respect to Plaintiff's limited intellectual functioning. Id. The Commissioner argues that the

ALJ properly developed Plaintiff's record and found it to be devoid of any definitive evidence that Plaintiff had a medically determinable impairment of low intelligence.  See Defendant's Brief, pp. 13-14.

A claimant in a claim for SSI or DIB bears the burden of establishing that he or she has a medically determinable impairment that precludes the performance of substantial gainful activity.  See 20 C.F.R. § 404.1512(a); see also Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).  However, when a claimant appears at his or her hearing before an ALJ without representation, the ALJ has a heightened duty to assist Plaintiff with developing the record by "scrupulously and conscientiously" probing and exploring "for all relevant facts."  See Thompson v. Sullivan, 933 F.2d 581, 585-586 (7th Cir. 1991). (*citing* Smith v. Secretary of Health, Education and Welfare, 587 F.2d 857, 860 (7th Cir.1978). (*citing* Gold v. Secretary of Health, Education and Welfare, 463 F.2d 38, 43 (2d Cir.1972)).

In this matter, the ALJ questioned Plaintiff about his education and intellectual abilities (R. at 191-197).  Plaintiff told the ALJ he had been enrolled in special education classes and had dropped out of school in the ninth grade (R. at 194, 196).  He disclosed that he "hated school" and "couldn't handle any of that" (R. at 196).  However, Plaintiff told the ALJ he obtained his GED in April 2001, and this information is consistent with what he disclosed in his Disability Report (R. at 79, 197).  To fulfill her heightened duty to Plaintiff, the ALJ requested his school records from his high school (R. at 108-114).  The records give no indication that Plaintiff was enrolled in special education classes or was subject

10

to an individualized education plan (R. at 109-110).  He received abysmal marks in the seventh and eighth grades, however, and he was often truant or tardy (R. at 110-114).

Later intelligence assessments of Plaintiff made by psychologists and social workers suggest he "was somewhat dull," "below average" in intellectual function, and with "borderline" intelligence (R. at 127, 136-139, 171-173, 174-175).  However, a licensed clinical social worker who interviewed Plaintiff in February 2008 opined he was "average" in intellectual function (R. at 167-168).  The Court notes these assessments of Plaintiff's intellectual functioning were made on the basis of interviews with Plaintiff, and without the benefit of standardized intelligence tests.  Id.  Further, while a State agency psychologist, Christine Ransom, Ph.D., noted Plaintiff's "intellectual functioning appeared to be below average," she also opined in her Medical Source Statement that Plaintiff "can follow and understand simple directions and instructions, perform simple rote tasks, maintain attention and concentration for simple tasks, consistently perform simple tasks," and "learn new simple tasks" (R. at 139).

The Court also notes that when making her finding that Plaintiff's claim of low intelligence was not medically determinable because the record was devoid of definitive evidence of such, the ALJ had the benefit of Plaintiff's complete record, including his application for SSI and/or DIB, his Disability Report – Appeal, and a later written communication sent directly to the ALJ (R. at 81-103, 121).  Clearly, Plaintiff's ability to read, to appropriately answer written questions, and to advocate in writing on his own behalf suggests that, for him, low

11

intelligence is not a disabling condition.  As an example, in his Disability Report – Appeal, Plaintiff answered questions about his illnesses/conditions in clear, appropriate sentences, with few grammatical, spelling or punctuation errors (R. at 97-102).  He also wrote to the ALJ requesting her assistance with obtaining his complete medical file from one of his treating sources (R. at 121).  While this document has several spelling errors, the sentences are clear, articulate, and in proper sequence.  Id.  Such reading and writing skills are not indicative of someone with seriously impaired intelligence.  Further, the ALJ was able to observe, personally question, and listen to Plaintiff's responses to her many questions at his hearing (R. at 187-212).  The transcript reveals Plaintiff understood the ALJ's questions and that he was able to answer numerous questions clearly, thoroughly, and articulately.

The Court finds that based on the properly developed evidence of record, the ALJ correctly found that Plaintiff did not establish low intelligence as one of his medically determinable impairments.

      c.      **The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity**

Plaintiff's third challenge to the ALJ's decision is that she failed to properly consider limitations from Plaintiff's severe mental impairment when she evaluated his residual functional capacity.  See Plaintiff's Brief, pp. 8-10.  Plaintiff argues that the ALJ erred by finding Plaintiff had a severe mental impairment of schizoaffective disorder, but had no limitations from the disorder that would affect his ability to engage in substantial gainful activity.  Id.  The Commissioner argues that the ALJ properly determined that, in spite of Plaintiff's severe mental

impairment, he retained the residual functional capacity "to understand, carry out and remember simple and more complex instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. He can perform semi-skilled work" (R. at 27). See Defendant's Brief, pp. 14-16.

An individual's statements about his or her condition, and the limitations caused by it, are not enough to establish disability. See 20 C.F.R. § 404.1529. The Commissioner's regulations require that an ALJ consider a claimant's observable signs and laboratory findings, as well as reported symptoms, when determining whether or not a disability exists within the meaning of the regulations. Id. When an ALJ determines that a claimant has a severe impairment or combination of impairments, the ALJ must determine if the impairment or combination of impairments meets or medically equals a listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d). If a claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the ALJ must determine if the claimant retains the residual functional capacity to perform his or her past relevant work, or if the claimant can adjust to other work that is available in the national and local economies. See 20 C.F.R. § 404.1520(e). The determination of a claimant's residual functional capacity rests with the ALJ. See 20 C.F.R. § 404.1527(e)(2); 20 C.F.R. § 404.1546; SSR 96-5p.

In this matter, neither Plaintiff nor his treating sources claim he has physical limitations that would affect his ability to perform work at all exertional

levels. Plaintiff's claim for SSI and/or DIB is based solely on his mental impairments. As discussed in section (b) above, Plaintiff was evaluated by a State agency psychologist who opined in her Medical Source Statement that he could "follow and understand simple directions and instructions, perform simple rote tasks, maintain attention and concentration for simple tasks, consistently perform simple tasks, [and] learn new simple tasks" (R. at 139). The psychologist assessed Plaintiff as having no more than mild to moderate difficulties performing complex tasks independently, relating adequately with others, and dealing appropriately with stress. Id. The ALJ gave this opinion some weight (R. at 28). It is well-settled that the opinions of a State agency examining physician or psychologist may constitute substantial evidence in a claim for SSI and/or DIB. See Monguer v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

Further, records from Plaintiff's treating sources prior to November 2005, as well as the report from the State agency psychologist, were examined by State agency consulting psychologist, L. Meade, Ph.D., who then completed a Mental Residual Functional Capacity Assessment of Plaintiff (R. at 144-146). Dr. Meade opined Plaintiff had no marked limitations in understanding and memory, sustained concentration and pace, social interaction and adaptation. Id. Dr. Meade assessed Plaintiff would be only moderately limited in work activities involving his ability to understand, remember and carry out detailed instructions, his ability to maintain attention and concentration for extended periods, his ability to complete a normal workday and workweek without interruptions from

14

psychologically based symptoms, his ability to perform at a consistent pace without an unreasonable number of and length of rest periods, his ability to interact appropriately with the general public, his ability to accept instructions and criticism from his supervisors, his ability to get along with co-workers without distracting them with behavioral extremes, his ability to respond appropriately to changes in the work setting, and his ability to set realistic goals and make plans independently of others (R. at 144-145). Dr. Meade assessed Plaintiff as having the mental residual functional capacity to perform simple work with limited interaction with others (R. at 146). While an ALJ is entitled to rely upon the opinions of State agency medical and psychological consultants concerning what a claimant can do despite his or her impairment(s), he or she is not bound by their findings. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). An ALJ must consider the findings of a State agency medical or psychological consultant in the light of all of the evidence in a claimant's record. See 20 C.F.R. § 404.1527(f)(2)(ii). If an ALJ does not give the opinions of a claimant's treating physician controlling weight, he or she is required to explain the weight given to the opinion of a State agency consultant. Id. Because Dr. Meade did not

15

personally examine Plaintiff and did not review any evidence added to Plaintiff's record after November 30, 2005, the ALJ gave his opinions limited weight.

The ALJ examined all of the medical and psychological evidence available to her and concluded that Plaintiff retained the mental and physical residual functional capacity to perform semi-skilled work (R. at 29-30). Plaintiff's past occupations, which he performed at the substantial gainful activity level, included semi-skilled work as a donut maker and as a short-order cook. The ALJ thus concluded Plaintiff could return to his past relevant work and was not under a disability during the time frame relevant to his claim.

The Court finds that, contrary to Plaintiff's argument that the ALJ found Plaintiff had no work-related limitations from his severe mental impairment, the ALJ assessed appropriate work-related limitations, but correctly found these limitations did not preclude the performance of Plaintiff's past relevant work.

## Conclusion

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical and psychological evidence and supported medical and psychologist opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical and psychological evidence, including Plaintiff's treating sources and the State agency psychological consultants, and afforded Plaintiff's subjective claims of mental and intellectual limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. The Court finds no reversible error and, further finding

that substantial evidence supports the ALJ's decision, the Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 26, 2010
         Syracuse, New York